IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-3275-D

| | | |
|---|---|---|
| SAMUEL CLEMENT WENDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMIE BULLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On September 25, 2023, Samuel Clement Wendt ("Wendt" or "plaintiff"), a state inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On December 8, 2025, Wendt moved for summary judgment [D.E. 109–111]. On February 5, 2026, Clayton Brewer ("Brewer"), Glenda Jackson ("Jackson"), Coy D. Collins ("Collins"), Shawna Brown ("Brown"), Frederick A. Shaw ("Shaw"), Mark Barnhill ("Barnhill"), George Baysden ("Baysden"), Raymond Bailey ("Bailey"), Jamie Bullard ("Bullard"), Tiffany Miller ("Miller"), and Justin Spivey ("Spivey") (collectively, "defendants") responded in opposition to Wendt's motion for summary judgment and filed a cross motion for summary judgment [D.E. 117–124]. On February 6, 2026, the court notified Wendt about defendants' motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 126]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On February 24, 2026, Wendt filed objections to defendants' motion for summary judgment [D.E. 127]. On March 2, 2026, Wendt moved to strike two of defendants' exhibits [D.E. 128]. On March 23, 2026, Wendt responded in opposition to defendants' motion for summary judgment [D.E. 133–134] and replied to defendants' response in

opposition to his motion for summary judgment [D.E. 135–136].[1] On April 3, 2026, defendants responded to Wendt's motion to strike and replied to Wendt's response in opposition to their motion for summary judgment [D.E. 138]. As explained below, the court denies Wendt's motion to strike, grants defendants' motion for summary judgment, and denies Wendt's motion for summary judgment.

I.

Wendt's complaint focuses on his treatment at Tabor Correctional Institution ("Tabor") between October 17, 2020, and March 16, 2023. See [D.E. 1] 8–20; [D.E. 110] ¶¶ 1–2. Wendt was assigned to close custody at Tabor, which is the highest custody level in the general population units. See [D.E. 110] ¶ 11; [D.E. 124] ¶ 5. On September 23, 2022, Wendt was promoted to medium custody but remained housed in close custody due to overcrowding. See [D.E. 1] 13; [D.E. 110] ¶¶ 11, 22; [D.E. 124] ¶ 4. On March 16, 2023, Wendt moved to Piedmont Correctional Institution ("Piedmont"). See [D.E. 110] ¶¶ 11, 29; [D.E. 124] ¶ 6.

On February 7, 2022, Tabor implemented a new policy for close custody inmates that reduced outside cell time from approximately 15 hours per day to three hours per day, reduced social interaction from 48 inmates to 12 inmates, and reduced outdoor exercise from seven hours per week to three hours per week. See [D.E. 1] 9–10; [D.E. 110] ¶¶ 30, 32. Wendt alleges that officials improperly implemented the new policy because Tabor gave no prior notice, and officials wrongly blamed the need for the new policy on the COVID-19 pandemic. See [D.E. 1] 9–10; [D.E. 110] ¶¶ 61–64; cf. [D.E. 121] ¶¶ 61–64.

---

[1] The court grants Wendt's motion to seal his medical records [D.E. 137].

In addition to the new policy, Wendt alleges outdoor exercise at Tabor was often cancelled due to weather and staff shortages. See [D.E. 1] 13; [D.E. 110] ¶ 37; cf. [D.E. 121] ¶ 37. Wendt alleges outdoor exercise rotated between grass yards and concrete pads, which were desolate, surrounded by 20-foot walls, open to the sky, and contained limited exercise equipment. See [D.E. 1] 12–13; [D.E. 110] ¶ 36; cf. [D.E. 121] ¶ 36. Wendt alleges he was not allowed to run or jog unless participating in socially interactive sports games because it was considered training for escape. See [D.E. 1] 8; [D.E. 110] ¶ 35. Wendt alleges he could not exercise in the indoor gym because it was used for emergency housing. See [D.E. 1] 9; [D.E. 110] ¶ 33. Wendt alleges he suffered from increased weight gain, increased blood pressure, bed sores, post-traumatic stress disorder, depression, anxiety, and increased dosage of mental health medication. See [D.E. 1] 15; [D.E. 110] ¶ 76; cf. [D.E. 121] ¶ 76.

At all times relevant in this action, the COVID-19 pandemic was ongoing. See [D.E. 124] ¶ 16; cf. [D.E. 134] ¶ 16. Throughout the pandemic, all North Carolina Department of Adult Correction ("NCDAC") facilities had to follow the policies of the NCDAC and the North Carolina Governor. See [D.E. 124] ¶ 17. The policies aimed to protect staff, inmates, and the public from the health risks of COVID-19. See [D.E. 124] ¶ 20. Defendants did not have the authority to override the policies. See [D.E. 124] ¶ 19.

COVID-19 cases heavily affected both NCDAC staff and inmates. See [D.E. 124] ¶ 21. The mandated precautions helped to ensure the safety of staff and inmates. See id. at ¶ 22. For example, staff were assigned to specific and nonrotating work assignments to limit the number of people each person encountered. See id. at ¶ 23. Staff had to obtain vaccinations, wear masks, avoid public transportation, and undergo regular COVID-19 testing. See id. at ¶ 25. Inmates were kept in small groups to prevent the spread of COVID-19. See id. at ¶ 24. Inmates were not allowed

to participate in group indoor recreation such as basketball because beds were placed in the gym for housing during quarantine periods. See [D.E. 124] at ¶¶ 26–27. But inmates were allowed outside recreation, to exercise inside their cells, to leisurely walk or exercise inside their housing units, to play board games, and to watch television. See id. at ¶¶ 28–30; cf. [D.E. 134] ¶¶ 28, 30.

On February 7, 2022, Tabor enacted additional precautions for close custody units due to COVID-19 and security concerns. See [D.E. 124] ¶¶ 31–32. The new policy allowed close custody inmates out of their cells in groups of 12 for three hours per day. See id. at ¶ 32. The new policy allowed inmates in close custody for disciplinary purposes three hours of outdoor exercise per week. See id.; cf. [D.E. 134] ¶ 32. Tabor determined that allowing 48 inmates out of their cells at the same time was not conducive to the policies of the NCDAC and the Governor. See [D.E. 124] ¶ 38; cf. [D.E. 134] ¶ 38.

On July 26, 2022, NCDAC issued policy F.1000, which made the restrictions that Tabor enacted for close custody inmates effective across all NCDAC facilities. See [D.E. 124] ¶ 33; cf. [D.E. 134] ¶¶ 33–35. Under the new policy, inmates were allowed to shower, use the telephone, and participate in indoor and outdoor recreation. See [D.E. 124] ¶ 34. The policy allowed inmates to attend educational classes and work assignments as usual, and time spent in class or at work did not count as outside cell time. See id. at ¶¶ 35–36; cf. [D.E. 134] ¶ 36. The policy allowed inmates access to the canteens on Mondays, Wednesdays, and Fridays, and scheduled outdoor exercise on Tuesdays, Thursdays, and Saturdays. See [D.E. 124] ¶ 37; cf. [D.E. 134] ¶ 37. Tabor never allowed close custody inmates to run unless they were engaged in a sports game because running presented a safety and security concern. See [D.E. 124] ¶¶ 39–40; cf. [D.E. 134] ¶ 40. When Tabor cancelled yard times due to inclement weather, reasonable efforts were made to reschedule exercise time. See [D.E. 124] ¶ 40; cf. [D.E. 134] ¶ 40.

Before he was convicted and incarcerated, Wendt served in the United States Army. See [D.E. 76] ¶ 2. In 2015, Wendt was diagnosed with major depressive disorder. See id. In 2017, Wendt was diagnosed with service-related post-traumatic stress disorder. See id. On September 25, 2020, Wendt's prison medical records indicated that he was in remission for post-traumatic stress disorder. See [D.E. 111] 90. On March 4, 2021, Wendt's prison medical records indicated that he was in partial remission for major depressive disorder. See id.

On February 22, 2022, Wendt met with a psychologist for a follow-up concerning his depression and anxiety. See id. at 120–121. When discussing stressors, Wendt mentioned his military history, incarceration, bankruptcy, and child custody. See id. The psychologist agreed to increase Wendt's Paxil prescription from 20 mg to 30 mg. See id. at 120–121. On April 12, 2022, Wendt met with the psychologist again and the psychologist noted that Wendt's anxiety and depression had decreased. See [D.E. 136] 10–11. On July 25, 2022, and November 21, 2022, the psychologist noted that Wendt's response to treatment continued to improve. See [D.E. 111] 110–111, 116–117.

Between May 20, 2022, and March 14, 2023, clinicians saw Wendt on four separate occasions for routine mental health assessments and noted that Wendt had no elevated risk factors. See id. at 94–96, 112–115, 118–119.

On February 22, 2022, medical staff noted that Wendt weighed 200 pounds and his blood pressure was 127/83. See id. at 106. On April 29, 2022, medical staff noted that Wendt weighed 198 pounds and his blood pressure was 128/92. See id. at 104–105. On August 11, 2022, medical staff noted that Wendt weighed 204.6 pounds and his blood pressure was 135/84. See id. at 102. On October 31, 2022, medical staff noted that Wendt weighed 204.6 pounds and his blood pressure

was 134/82. See [D.E. 111] 100–101. On January 26, 2023, medical staff noted that Wendt weighed 198 pounds and his blood pressure was 136/87. See id. at 86.

On March 16, 2023, after Wendt transferred to Piedmont, medical staff examined Wendt and noted that he had no rashes or sores. See id. at 88. On April 27, 2023, medical staff examined Wendt for complaints of bed sores and noted that ointment and a cool washcloth relieved his symptoms. See id. at 138. On May 24, 2023, Wendt was diagnosed with folliculitis ulerythematosa reticulata. See id. at 90.

Wendt alleges defendants "severely restricted exercise opportunities, social interaction opportunities, outside cell time, used abusive/offensive language, and punished violators of arbitrary customs/ policies" in violation of his Eighth Amendment rights. [D.E. 1] 8. Wendt alleges the way defendants implemented "these restrictive policies/ customs" violated his Fourteenth Amendment due process rights. Id. Wendt also alleges defendants violated the North Carolina Constitution, North Carolina General Statute § 148-23, and NCDAC policies. See id. at 8, 18–19.

## II.

Wendt moves "to strike two of defendants' exhibits in their recently filed set of dispositive motions as improper before the court and violative of both Rule 11 and Rule 37 of the Federal Rules of Civil Procedure." [D.E. 128] 1. Specifically, Wendt "moves to strike [D.E. 120-5] NCDAC policy chapter F.1000 as well as [D.E. 121-3] NCDAC policy chapter G.0300 and all references there to within any dispositive filing or supporting document." Id. Wendt asks the court to strike NCDAC policy chapter F.1000 because the NCDAC rescinded it, it was not publicly available, and defendants did not disclose it during discovery. See id. at 1–4; [D.E. 128-1] 3.

Wendt asks the court to strike NCDAC policy chapter G.0300 because it is misleading, irrelevant, and was not in effect at the time of the events in the complaint. See [D.E. 128] 5–7.

Defendants respond that NCDAC policy chapter F.1000 was publicly available as evidenced by Wendt's ability to find updated publicly available policy showing it was rescinded, that the policy continued to be enforced, and that officials enacted the policy during the pandemic and the department's transition from the North Carolina Department of Public Safety to the North Carolina Department of Adult Correction. See [D.E. 138] 3–4. Defendants also argue that enforcing the policies and procedures did not violate Wendt's constitutional rights. See id.

The court has considered the motion to strike under the governing standards. See Fed. R. Civ. P. 11; Fed. R. Civ. P. 37(b)(2); Liu v. Lowe's Home Improvement, No. 23-1105, 2024 WL 3102796, at *2 (4th Cir. 2024) (per curiam) (unpublished); Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40–41 (4th Cir. 1995); Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989); Smith v. Absolute Resolution Investments, LLC, No. PX-25-675, 2026 WL 2253679, at *4 (D. Md. Aug. 5, 2026) (unpublished). The court denies the motion for the reasons stated in defendants' response in opposition. See [D.E. 138] 3–4.

III.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the

allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

To establish a prima facie claim that prison conditions violate the Eighth Amendment, a plaintiff must show "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (cleaned up); see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016); Rish v. Johnson,

131 F.3d 1092, 1096 (4th Cir. 1997); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The objective prong requires the prisoner to show that "the deprivation of [a] basic human need was objectively sufficiently serious." Strickler, 989 F.2d at 1379 (emphasis and quotation omitted); see Scinto, 841 F.3d at 225. "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta, 708 F.3d at 525 (quotation omitted); see Scinto, 841 F.3d at 225.

The subjective prong requires the prisoner to show that the prison official acted with deliberate indifference to the inmate's health or safety. See, e.g., Farmer, 511 U.S. at 834–40; De'lonta, 708 F.3d at 525; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. "Deliberate indifference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 826; Johnson, 145 F.3d at 167. Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See Farmer, 511 U.S. at 837; De'lonta, 708 F.3d at 525. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Makdessi v. Fields, 789 F.3d 126, 133–34 (4th Cir. 2015). "It is not enough that the [prison official] should have recognized" the objectively serious condition, medical need, or risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis omitted). Rather, a plaintiff must prove "actual knowledge of the risk of harm to the inmate[.]" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (emphasis omitted). A prisoner's failure to give warning of, or protest exposure to, the risk does not conclusively show that a prison official lacked actual knowledge. See

Makdessi, 789 F.3d at 134. But "[a] prison official's subjective actual knowledge can be proven through circumstantial evidence[.]" Id. at 133. "[A]n injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." Id.

Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate" the objectively serious condition, medical need, or risk of harm. Iko, 535 F.3d at 241 (quotation and emphasis omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); see Wilson v. Seiter, 501 U.S. 294, 298–99 (1991). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241.

Even viewing the record in the light most favorable to Wendt, no rational jury could find that defendants violated Wendt's Eighth Amendment rights. Wendt was allowed out of his cell with a group of 12 inmates for three hours per day. See [D.E. 110] ¶ 32; [D.E. 124] ¶ 32. Wendt's three hours of outside cell time per day was in addition to time spent in class or at work. See [D.E. 124] ¶¶ 35–36. Additionally, Wendt was allowed three hours of outdoor exercise per week. See [D.E. 110] ¶ 32; [D.E. 124] ¶ 32.

No rational jury could find that defendants completely deprived Wendt "of all meaningful opportunities to [socialize and] exercise," or completely deprived Wendt of "some regular out-of-cell [socialization and] exercise." Bolick v. Anderson, 169 F.4th 528, 536–37 (4th Cir. 2026) (cleaned up); see Strickler, 989 F.2d at 1382 ("[T]here was no unconstitutional deprivation of the need for exercise . . . where exercise was allowed only for two one-hour periods per week.") (citation omitted); Collins v. Antonelli, No. 2:24-CV-3915, 2026 WL 1739063, at *13 (D.S.C.

Apr. 3, 2026) (unpublished), report and recommendation adopted, 2026 WL 1737607 (D.S.C. June 16, 2026) (unpublished); Dickerson v. Schmitt, No. 7:23-CV-68, 2023 WL 3726507, at *5 (W.D. Va. May 30, 2023) (unpublished); Ferebee v. Manis, No. 7:19-CV-681, 2022 WL 4477719, at *4 (W.D. Va. Sept. 26, 2022) (unpublished) ("[Plaintiff's] complaints of sporadic denials of recreation are not a denial of the minimal civilized measure of life's necessities. Absent more, [plaintiff's] allegations that recreation time is shortened or cancelled on occasion does not state a claim under the Eighth Amendment.") (cleaned up); cf. Lyles v. Stirling, 844 F. App'x 651, 654 (4th Cir. 2021) (per curiam) (unpublished); Rivera v. Mathena, 795 F. App'x 169, 174 (4th Cir. 2019) (per curiam) (unpublished). Wendt has failed to demonstrate a genuine issue of material fact concerning whether he was subjected to an objectively serious deprivation of a basic human need. He was not.

As for Wendt's arguments that he suffered from worsening post-traumatic stress disorder and depression, increased blood pressure, weight gain, and bed sores, the medical record demonstrates that Wendt's anxiety and depression decreased after he met with a psychologist and changed his mental health prescription, that Wendt discussed several mental health stressors with his psychologist that were unrelated to his conditions of confinement, that Wendt received several mental health assessments during the relevant time period and the clinicians found no elevated risk factors, that Wendt's weight and blood pressure fluctuated minimally during the relevant time period, and that Wendt did not complain of bed sores until after he transferred to Piedmont. See [D.E. 111] 86–141; [D.E. 136] 2–29.

On this record, Wendt has failed to demonstrate a genuine issue of material fact concerning whether any defendant was deliberately indifferent to his health or safety, and causation. See Collins, 2026 WL 1739063, at *13; Lyles v. Stonebreaker, No. 4:22-3572, 2025 WL 2918103, at

*6 (D.S.C. June 30, 2025) (unpublished), report and recommendation adopted as modified, 2025 WL 2717347, at *4 (D.S.C. Sept. 24, 2025) (unpublished); Alexander v. Trent, No. 7:22-CV-488, 2025 WL 1064734, at *5 (W.D. Va. Apr. 9, 2025) (unpublished); Grant v. Bowers, No. 1:22-CV-330, 2023 WL 2392729, at *5 (E.D. Va. Mar. 6, 2023) (unpublished); Watford v. Leabough, No. 3:20-CV-676, 2022 WL 363957, at *7 (E.D. Va. Feb. 7, 2022) (unpublished) ("Plaintiff establishes nothing more than a routine discomfort, not an extreme deprivation."). Thus, the court grants defendants' motion for summary judgment and denies Wendt's motion for summary judgment.

B.

No state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Meachum v. Fano, 427 U.S. 215, 223 (1976). To determine whether a defendant violated due process, the court initially must determine whether a protected liberty interest exists. See Sandin v. Conner, 515 U.S. 472, 483–84 (1995). To demonstrate a protected liberty interest, a prisoner must show (1) denial of an interest that can arise either from the Constitution itself or from state laws or policies, and that (2) "this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) (quotations omitted). "[L]iberty interests which are protected by the Due Process Clause . . .will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (internal quotations omitted); see Incumaa v. Stirling, 791 F.3d 517, 526–27 (4th Cir. 2015); Prieto, 780 F.3d at 249.

Even viewing the record in the light most favorable to Wendt, Wendt has failed to identify a protected liberty interest or demonstrate that defendants subjected Wendt to punishment constituting an atypical and significant hardship. See Cartagena v. Lovell, 103 F.4th 171, 182–84

(4th Cir. 2024); Thompson v. Foster, No. 24-CV-871, 2026 WL 102486, at *4 (D. Md. Jan. 14, 2026) (unpublished); Alexander, 2025 WL 1064734, at *9; Ford v. Northam, No. 7:22-CV-122, 2023 WL 2767780, at *19 (W.D. Va. Mar. 31, 2023) (unpublished), aff'd, 2023 WL 6057493 (4th Cir. 2023) (per curiam) (unpublished).

To the extent Wendt alleges that defendants violated his Fourteenth Amendment rights because of defendants' alleged violation of prison policy, violating a prison policy that does not result in a constitutional violation does not create a viable claim under section 1983. See King v. Riley, 76 F.4th 259, 267 (4th Cir. 2023); Danser v. Stansberry, 772 F.3d 340, 348–49 (4th Cir. 2014); Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished); Siddha v. Hogan, No. ELH-21-2131, 2022 WL 1187866, at *24 (D. Md. Apr. 21, 2022) (unpublished); Bryant-El v. Rose, No. CCB-18-84, 2019 WL 1386728, at *5 (D. Md. Mar. 27, 2019) (unpublished); Martin v. Duffy, No. 4:15-2104, 2015 WL 11121379, at *2 (D.S.C. June 30, 2015) (unpublished), report and recommendation adopted, 2015 WL 11121380 (D.S.C. Aug. 3, 2015) (unpublished). Additionally, "[m]ere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under [section] 1983." Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (per curiam) (unpublished); see Cameron v. Bonney, 523 F. App'x 969, 970 (4th Cir. 2013) (per curiam) (unpublished); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990) (collecting cases), aff'd, 917 F.2d 1302 (4th Cir. 1990) (per curiam) (unpublished table decision). Thus, the court grants defendants' motion for summary judgment and denies Wendt's motion for summary judgment.

C.

In light of the dismissal of Wendt's federal claims, the court declines to exercise supplemental jurisdiction over Wendt's state-law claims and dismisses those claims without

prejudice. See 28 U.S.C. § 1367(c)(3); Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 31–32 (2025); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC, 175 F.4th 455, 464–65 (4th Cir. 2026); Kovachevich v. Nat'l Mortg. Ins. Corp., 140 F.4th 548, 556 (4th Cir. 2025); Henderson v. Harmon, 102 F.4th 242, 251 (4th Cir. 2024); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

IV.

In sum, the court GRANTS plaintiff's motion to seal [D.E. 137], DENIES plaintiff's motion to strike [D.E. 128], GRANTS defendants' motion for summary judgment [D.E. 117], DENIES plaintiff's motion for summary judgment [D.E. 109], and DISMISSES WITHOUT PREJUDICE plaintiff's state-law claims. The clerk shall close the case.

SO ORDERED. This 19 day of August, 2026.

J. Dever

JAMES C. DEVER III
United States District Judge